UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

NOAH MAGGIO,

                          Plaintiff,

      -against-

CITY OF NEW YORK, RYAN MCGUINESS,
Individually, SALVATORE OLIVERI, Individually,
JAMES AMUNDSEN, Individually, CHRISTOPHER PAYNE,
Individually, PETER EVENSEN, Individually,
ANNARUTH LEGARE, Individually, JASON SARNICKI,
Individually, SAMANTHA SIMONETTI, Individually,
JONATHAN BASS, Individually, RUSSELL LENNON,
LISA HELTZER, Individually, and SAMANTHA SURAT,
Individually,

                          Defendants.

--------------------------------------------------------------------------------X

**AMENDED COMPLAINT**

19 CV 6442
(DG) (RML)

<u>Jury Trial Demanded</u>

      Plaintiff NOAH MAGGIO, by his attorneys, Brett H. Klein, Esq., PLLC, complaining of

the defendants, respectfully alleges as follows:

### **Preliminary Statement**

      1.    Plaintiff brings this action for compensatory damages, punitive damages and

attorneys' fees pursuant to 42 U.S.C. §§1983 and 1988 for violations of his civil rights, as said

rights are secured by said statutes and the Constitution of the United States.

### **JURISDICTION**

      2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth

and Fourteenth Amendments to the United States Constitution.

      3.    Jurisdiction is found upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

4.      Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b), in that this is the District in which the claim arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38 (b).

## PARTIES

6.      Plaintiff NOAH MAGGIO is a 66-year-old man residing in Staten Island, New York.

7.      Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant CITY OF NEW YORK maintains the New York City Police Department (hereinafter referred to as "NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the aforementioned municipal corporation, CITY OF NEW YORK.

9.      That at all times hereinafter mentioned, the individually named defendants RYAN MCGUINESS, SALVATORE OLIVERI, JAMES AMUNDSEN, CHRISTOPHER PAYNE, PETER EVENSEN, ANNARUTH LEGARE, JASON SARNICKI, SAMANTHA SIMONETTI, JONATHAN BASS, RUSSELL LENNON, LISA HELTZER, and SAMANTHA SURAT were acting under the supervision of the NYPD and according to their official duties.

10.      That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New

2

York and/or the City of New York.

11.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant CITY OF NEW YORK.

## **FACTS**

12.     On March 6, 2018, plaintiff NOAH MAGGIO was lawfully present in the backyard of his residence located at 157 Marisa Circle, Staten Island, New York.

13.     At the time, EMTs were inside plaintiff's house trying to revive his daughter who had cerebral palsy and was in respiratory and cardiac arrest.

14.     Believing his daughter was likely dead, Mr. Maggio was alone in in his backyard crying and otherwise distraught.

15.     While plaintiff was in his backyard, defendant NYPD officers RYAN MCGUINESS, SALVATORE OLIVERI, JAMES AMUNDSEN, CHRISTOPHER PAYNE, PETER EVENSEN, ANNARUTH LEGARE, JASON SARNICKI, SAMANTHA SIMONETTI, JONATHAN BASS, RUSSELL LENNON, LISA HELTZER, and SAMANTHA SURAT arrived at the location and broke through the gate in Mr. Maggio's backyard and formed a barrier blocking him from entry into his home, and forcing him to remain towards his rear fence.

16.     Mr. Maggio, while still rightly devasted by his daughter's critical condition, posed no threat to himself or the defendant officers, and had significantly regained his composure by the time the needlessly excessive police presence was on scene.

17.     Shortly thereafter, Mr. Maggio's daughter's private nurse came into the backyard to inform plaintiff that his daughter was breathing again.

18.     As plaintiff attempted to enter his home to see his daughter, who was in the room

3

with the door leading to the backyard, defendant officers including, without limitation, OLIVERI, PAYNE, EVENSEN, LEGARE, BASS, and AMUNDSEN, in an unwarranted and needless display of brute force, took plaintiff down to the ground.

19.     While Mr. Maggio was face down on the ground, defendant officers piled on top of him, completely restricting Mr. Maggio's freedom of movement.  A defendant officer, believed to be defendant Lieutenant MCGUINESS, kicked plaintiff in the back.

20.     Also, while plaintiff was on the ground, defendant officers twisted and pulled his right arm, forcing his arm up toward the back of his neck, causing needless excruciating pain.

21.     Plaintiff was then rear handcuffed in an overtight manner.  Defendants including, without limitation, OLIVERI, PAYNE, EVENSEN, LEGARE, BASS, and AMUNDSEN, were involved in handcuffing plaintiff.

22.     Mr. Maggio had neither committed any crime nor did any defendants allege or accuse him of committing any crime.

23.     Defendants' actions had caused a crowd of plaintiff's friends and neighbors to gather, causing plaintiff to suffer embarrassment and humiliation, on top of the distress he was already experiencing due to his daughter's dire situation.

24.     Defendant officers pulled plaintiff to a sitting position, leaving him rear handcuffed on his deck.

25.     While in said position, and surrounded by other defendant officers, defendant MCGUINESS unholstered his Taser conducted energy device in a threatening manner.

26.     In response, plaintiff asked if he was going to be tased.  Defendant MCGUINESS holstered his Taser and smirked.

27.     Defendant MCGUINESS had not been responding to any real or perceived threat

4

at the time he unholstered his Taser, and did so for no legitimate reason.

28.     Defendant officers thereafter stood plaintiff up, and defendant MCGUINESS proceeded to continue to harass plaintiff by, without limitation, poking plaintiff in the chest with his finger.

29.     Throughout this incident, plaintiff begged the defendants to be allowed to be with his gravely ill daughter, and he tried desperately to explain that they could not know what he was going through.  The defendants refused to allow plaintiff to see his daughter.

30.     Due to the overwhelming distress he was experiencing, Mr. Maggio started to have physical symptoms of what he believed might be a heart attack.

31.     Plaintiff was placed on a gurney with his hands still handcuffed behind him.  Mr. Maggio went onto the gurney cooperatively.

32.     Plaintiff was then tightly strapped to the gurney.  He was positioned supine with his body on top of his hands while still rear handcuffed.

33.     As he was being wheeled towards an ambulance on the gurney, defendant MCGUINESS, who had been obscured by a curve in the path, emerged and, catching plaintiff by surprise, punched plaintiff in the ribs on his right side.

34.     Plaintiff had already complained to the defendants that the handcuffs were too tight and were cutting off his circulation causing him pain.

35.     This was exacerbated by plaintiff's positioning on the gurney, and the pressure of plaintiff's body weight pressing down on his overtight handcuffed arms, all of which caused Mr. Maggio to suffer needless pain and suffering.

36.     Plaintiff's hands and arms were extremely numb and throbbing in pain.

37.     Despite repeated complaints, defendants neither adjusted plaintiff's handcuffs nor

5

repositioned him on the gurney.

38.     Mr. Maggio was taken to Staten Island University Hospital.  His daughter had also been taken there.

39.     Plaintiff remained handcuffed in an increasingly dangerous and painful manner until he was seen by an attending psychiatrist who asked that the handcuffs be removed.

40.     Once plaintiff's handcuffs were removed, plaintiff observed that his right hand and arm were starting to turn a deep, dark purple color.

41.     Despite not being under arrest, and being in the same hospital as his daughter, defendants' actions prevented plaintiff from spending this critical time with his daughter.

42.     Plaintiff was still not free to leave after receiving psychiatric clearance.  Plaintiff remained in the defendants' custody until discharge paperwork was prepared and signed.  Only then did the defendants release plaintiff from their custody.

43.     Plaintiff immediately went to his daughter upon his release.

44.     Plaintiff's daughter was intubated and breathing through a ventilator.  Tragically, she died a little over two weeks later.

45.     As a result of defendants' actions, plaintiff suffered physical and emotional injuries, including, *inter alia*, pain, swelling, bruising, numbness, tingling, and impaired use of his right hand and right arm, pain to his right arm and shoulder, chest pain, back pain, bruises and contusions, deprivation of liberty, deprivation of the companionship of his dying daughter, embarrassment, humiliation, anxiety, fear, and emotional distress.

46.     There was no justification for the excessive force used by the officers and for plaintiff's unlawful imprisonment.  These acts were an unwarranted display of cruelty and brutality without cause or legitimate purpose.

6

47.     Plaintiff was neither under arrest nor being accused of committing any crime. The defendants' inexplicable actions in responding to a man grieving by smirking, assaulting, handcuffing, seizing, and blocking him from seeing his dying daughter, for what well might have been the last time, was extreme, outrageous, exceeded all reasonable bounds of human decency and truly shocked the conscience.

48.     These acts were committed in the presence of other NYPD officers who stood by and failed to intervene despite meaningful opportunities to intercede.  In so doing, the City and its' employees intentionally, recklessly, and negligently caused physical and emotional injuries to the claimant.

49.     Defendants MCGUINESS, OLIVERI, AMUNDSEN, PAYNE, EVENSEN, LEGARE, SARNICKI, SIMONETTI, BASS, LENNON, HELTZER, and SURAT either directly participated in the above illegal conduct, or failed to intervene despite being present or aware of said conduct, and defendant MCGUINESS supervised the defendants and personally engaged in such unlawful conduct.

50.     All of the above occurred as a direct result of the unconstitutional policies, customs or practices of the City of New York, including, without limitation, the inadequate screening, hiring, retaining, training and supervising its employees; and pursuant to customs or practices of employing excessive force, unsafe use of handcuffs, mishandling persons in need of psychiatric, medical, and/or emotional assistance, falsifications, of lax investigations of police misconduct, and of covering up abuse by fellow officers.  This was also caused by the City's policy of responding to medical and/or psychiatric calls and/or emergencies with overwhelming police/paramilitary response, resulting in the needless use of force and needless arrests due to the City's failure to properly train its officers to handle such situations properly and safely, and/or to

7

otherwise send properly trained and credentialed non-police personnel to appropriately deal with such matters.

51.     The aforesaid event is not an isolated incident.  Defendant CITY OF NEW YORK is aware from lawsuits, notices of claims, complaints filed with the NYPD's Internal Affairs Bureau, and the CITY OF NEW YORK'S Civilian Complaint Review Board, and extensive media coverage that many NYPD officers, including the defendants, are insufficiently trained regarding the use of force, safe handcuffing, de-escalation, and responding to persons in psychiatric, medical and/or emotional crisis, and that they engage in a practices of falsification and cover ups of police abuse.

52.     Further, in another civil rights action filed in this Court involving false allegations by NYPD officers, Eastern District Senior Judge Jack B. Weinstein pronounced:

> Informal inquiry by the court and among judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  . . . [T]here is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged. *Colon v. City of New York, et. al.,* 2009 WL 4263362, *2 (E.D.N.Y. 2009).

53.     Defendant CITY OF NEW YORK is further aware that such improper training has often resulted in a deprivation of civil rights.  Despite such notice, defendant CITY OF NEW YORK has failed to take corrective action.  This failure caused the officers in the present case to violate the plaintiff's civil rights.

54.     Moreover, upon information and belief, defendant CITY OF NEW YORK was aware, prior to the incident, that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed as police officers.  Despite such notice, defendant CITY of NEW YORK has retained these officers, and failed to adequately train and

supervise them.

55.     All of the aforementioned acts of defendants, their agents, servants and employees were carried out under the color of state law.

56.     All of the aforementioned acts deprived plaintiff NOAH MAGGIO of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. §1983.

57.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

58.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

59.     As a result of the foregoing, plaintiff NOAH MAGGIO sustained, *inter alia*, physical injuries, emotional distress, embarrassment, and humiliation, and deprivation of his constitutional rights.

## Federal Claims

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrest/Unlawful Imprisonment under 42 U.S.C. § 1983)

60.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "59" with the same force and effect as if fully set forth herein.

61.     Defendants seized and confined plaintiff NOAH MAGGIO without probable cause, causing him to be detained against his will for an extended period of time and subjected to

physical restraints.

62.    Defendants caused plaintiff NOAH MAGGIO to be unlawfully imprisoned.

63.    As a result of the foregoing, plaintiff NOAH MAGGIO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Excessive Force under 42 U.S.C. § 1983)

64.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "63" with the same force and effect as if fully set forth herein.

65.    The level of force employed by defendants was excessive, objectively unreasonable and otherwise in violation of plaintiff NOAH MAGGIO'S constitutional rights.

66.    As a result of the aforementioned conduct of defendants, plaintiff NOAH MAGGIO was subjected to excessive force and sustained physical and emotional injuries.

67.    As a result of the foregoing, plaintiff NOAH MAGGIO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Failure to Intervene under 42 U.S.C. § 1983)

68.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "67" with the same force and effect as if fully set forth herein.

69.    Defendants had an affirmative duty to intervene on behalf of plaintiff, whose constitutional rights were being violated in their presence by other officers.

10

70.     The defendants failed to intervene to prevent the unlawful conduct described herein.

71.     As a result of the foregoing, plaintiff was subjected to excessive force, his liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated, emotionally abused, and subjected to handcuffing and other physical restraints.

72.     As a result of the foregoing, plaintiff NOAH MAGGIO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(Supervisory Liability under 42 U.S.C. § 1983 )

73.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74.     The supervisory defendant, defendant Lt. McGuinness, personally caused plaintiff's constitutional injury by being deliberately or consciously indifferent to the rights of others in failing to properly supervise and train his subordinate employees and otherwise via his personal involvement in the above-described unlawful conduct.

75.     As a result of the foregoing, plaintiff NOAH MAGGIO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION
(Municipal Liability under 42 U.S.C. § 1983)

76.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in

11

paragraphs numbered "1" through "75" with the same force and effect as if fully set forth herein.

77.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

78.     The aforementioned customs, policies, usages, practices, procedures and rules of the New York City Police Department, but were not limited to, subjecting citizens to excessive force, seizing individuals without cause, mistreating persons in emotional need, needlessly sending police to medical emergencies and/or crisis situations that result in unconstitutional police action due to the lack of proper training for such emergencies, and engaging in a practice of falsification to cover up their abuse of authority. In addition, the CITY OF NEW YORK engaged in a policy, custom or practice of inadequate screening, hiring, retaining, training, and supervising its employees that was the moving force behind the violation of plaintiff's rights as described herein. As a result of the failure of the CITY OF NEW YORK to properly recruit, screen, train, discipline, and supervise its officers, including the individual defendants, defendant CITY OF NEW YORK has tacitly authorized, ratified, and has been deliberately indifferent to, the acts and conduct complained of herein.

79.     The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department constituted deliberate indifference to the safety, well-being and constitutional rights of plaintiff.

80.     The foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

81.     The foregoing customs, policies, usages, practices, procedures and rules of the

CITY OF NEW YORK and the New York City Police Department were the moving force behind the Constitutional violations suffered by plaintiff as alleged herein.

82.     As a result of the foregoing customs, policies, usages, practices, procedures and rules of the CITY OF NEW YORK and the New York City Police Department, plaintiff NOAH MAGGIO was subjected to excessive force without intervention.

83.     Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating plaintiff's constitutional rights.

84.     All of the foregoing acts by defendants deprived plaintiff of federally protected rights, including, but not limited to, the right:

      A.     To be free from excessive force;

      B.     To be free from false arrest;

      C.     To be free from the failure to intervene; and

      D.     To be free from supervisory liability.

85.     As a result of the foregoing, plaintiff NOAH MAGGIO is entitled to compensatory damages in an amount to be fixed by a jury, and is further entitled to punitive damages against the individual defendants in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

**WHEREFORE**, plaintiff NOAH MAGGIO demands judgment and prays for the following relief, jointly and severally, against the defendants:

(A)     full and fair compensatory damages in an amount to be determined by a jury;

(B)     punitive damages against the individual defendants in an amount to be determined by a jury;

(C)     reasonable attorneys' fees and the costs and disbursements of this action; and

(D)     such other and further relief as appears just and proper.

Dated: New York, New York
       March 5, 2021

> BRETT H. KLEIN, ESQ., PLLC
> Attorneys for Plaintiff NOAH MAGGIO
> 305 Broadway, Suite 600
> New York, New York 10007
> (212) 335-0132
>
> By:      *Brett Klein*
>       _____
>       BRETT H. KLEIN (BK4744)

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

NOAH MAGGIO,

                                Plaintiff,

      -against-                                     19 CV 6442
                                              (DG) (RML)

CITY OF NEW YORK, RYAN MCGUINESS,
Individually, SALVATORE OLIVERI, Individually,
JAMES AMUNDSEN, Individually, CHRISTOPHER PAYNE,
Individually, PETER EVENSEN, Individually,
ANNARUTH LEGARE, Individually, JASON SARNICKI,
Individually, SAMANTHA SIMONETTI, Individually,
JONATHAN BASS, Individually, RUSSELL LENNON,
LISA HELTZER, Individually, and SAMANTHA SURAT,
Individually,

                                Defendants.

--------------------------------------------------------------------------------X

## AMENDED COMPLAINT

**BRETT H. KLEIN, ESQ., PLLC**
Attorneys for the Plaintiff
305 Broadway, Suite 600
New York, New York 10007
(212) 335-0132